```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
MARLENE AUGUSTINE, KEISHA BROWN,                            :
LISA CABRERA, IVETTE FRANCIS, and                           :
TAMMY SMITH,                                                :
                                                            :
                            Plaintiffs,                     :    14-CV-7807 (JPO)
                                                            :
              -v-                                           :    OPINION AND ORDER
                                                            :
CORNELL UNIVERSITY, WEILL CORNELL                           :
MEDICAL COLLEGE, and KRISTEN ADAMS,                         :
                            Defendants.                     :
                                                            :
----------------------------------------------------------- X
```

J. PAUL OETKEN, District Judge:

Plaintiffs Marlene Augustine, Keisha Brown, Lisa Cabrera, Ivette Francis, and Tammy Smith bring this action against Cornell University, Weill Cornell Medical College (collectively "Weill"), and Kristen Adams, alleging illegal discrimination on the basis of race in violation of 28 U.S.C. § 1981 and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.* Defendants move to dismiss Smith's claims under Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons that follow, Defendants' motion is granted in part and denied in part.

I.   **Background**[2]

Smith, a black woman (¶ 113), is a Senior Administrative Secretary in the anesthesiology department of Weill Cornell Medical College in Manhattan (¶ 115). Adams, a white woman (¶

---

[1] Defendants also move to dismiss many of the other Plaintiffs' claims in the Amended Complaint (Dkt. No. 10) on the ground that they are time-barred. Plaintiffs concede that the claims identified by Defendants are time-barred. (*See* Dkt. No. 15, Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss, at 2.) Defendants' motion to dismiss those claims is therefore granted.

[2] The following facts are taken from the Amended Complaint and are assumed true for the purposes of the instant motion. Because the parties contest only Smith's claims, only the facts

1

14), is the Supervisor of the department (*id.*). As the "top administrator" for the department, Adams is "principally responsible for personnel decisions . . . including, inter alia, the decisions regarding what positions to create, who [*sic*] to consider for promotions, and who [*sic*] to ultimately promote." (¶ 117.)

Adams can effectively promote employees by "alter[ing] [their] job descriptions" and "assign[ing] [them] new duties." (¶ 120.) Specifically, by adding new duties—the duties are "within [her] discretion" (¶ 121)—Adams can make employees eligible for promotions and pay raises (*id.*). Adams had the ability to create a promotional opportunity for Smith, who had made "repeated and ardent requests for . . . [a] promotion to be created (i.e., by way of level increase, etc.)." (¶ 122.) Smith never received the benefit of a promotional opportunity. (*Id.*) But many Caucasian employees did. (*Id.*)

The principal means by which Adams discriminated against Smith was through the assignment of tasks and description of work. In "an effort to have [the Caucasian employees] . . . promoted," Adams updated their job descriptions to reflect "duties/tasks which she knew they never performed." (*Id.*) Specifically, in 2011 and 2013, "Maria Killion (a Caucasian) . . . [and] Lacey Ferraro (a Caucasian)" had their duties "enhanced" but were not required to perform the additional job duties. (¶ 125.) The "tasks were merely 'added' in an effort to increase their salaries and to further enhance their promotability." Meanwhile, Adams "repeatedly enhanced [Smith's] duties but refused to consider her for concomitant promotions by virtue of [her] race." (¶ 124.)

In October 2009, a Caucasian employee, Kelsi Welter, was promoted. Smith complained to Weill's human resources department. Randi Glinsky, a human resources officer, told her

---

relevant to her claims are discussed. All record citations are to the Amended Complaint unless specified otherwise.

"'not [to] take this matter any further' and stated that . . . Adams would retaliate against her if she did." (¶ 127 (brackets in original).)

A year later, Smith gave the anesthesiology department a low rating on an employee satisfaction survey that was circulated around the office. (¶ 128.) The low rating was based chiefly on Adams's racial discrimination. (*Id.*) In response, an Employee Relations Specialist at Weill informed Smith that she would be invited to meet with him. (¶ 129.) Before this meeting, Smith and others "participated in the creation of a group complaint" about Adams, Weill, and their collective "racial discrimination." (¶ 130.) At the meeting, which took place in February 2011, Smith explained her concerns about Adams to Weill's representative. (¶ 132.) Two days later, "Smith arrived at work to see that her employee information log books (which contained employee salary information) had been removed, and a fly glue trap had been intentionally placed on her metal files holder." (¶ 134.) Adams "directed" these acts as retaliation for Smith's discrimination complaint. (¶ 135.)

The retaliation continued. (¶ 138.) Shortly after Smith's meeting with the Employee Relations Specialist, Adams began sabotaging Smith's work by "having certain information either added or deleted which would normally have been performed by . . . Smith and . . . Smith alone." (*Id.*) This "complicate[d] . . . Smith's job to perform her employment tasks . . . [and] laid the groundwork for . . . Adams to reprimand . . . Smith and continue [*sic*] deny her promotional opportunities." (*Id.*)

In May 2012, Adams asked Smith to transfer from the fiscal division of the department, where she had been working, to the Chairman's Suite division. (¶ 139.) The transfer would not have been a promotion and would have entailed more work for the same pay. (*Id.*) Smith, accordingly, declined. Adams, in response, threatened to have Smith fired. In December 2013, Smith learned that a less qualified Caucasian woman, Marissa Matarazzo, had been given a job

3

in the Chairman's Suite that would have constituted a promotion had Smith been given the job.[3] (¶ 146.)  Smith was more qualified than Matarazzo because the latter had never worked at Weill's location on East 68th Street in Manhattan.  (*Id.*)

Smith nonetheless continued to request that, "on instances whereby . . . Smith had her job description updated," Adams pass along Smith's credentials to the human resources department for consideration of a promotion.  (¶ 144.)  Adams consistently refused.  (*Id.*)  Thus, when Smith contacted Weill's Human Resources Compensation Director, she was informed that she was not eligible for a promotion.  "This was because the HR Compensation Director had an outdated job description for . . . Smith which did not include all the tasks and duties [she] was performing at that time."  (¶ 145.)

## II.   Discussion

Defendants move to dismiss Smith's state- and federal-law claims for discriminatory failure to promote and for illegal retaliation.

### A.   Legal Standard

To survive a motion to dismiss under Federal Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The standard of "facial plausibility" is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Plausibility is distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir.

---

[3] The position posted was for a "level 6," and Smith was only at a "level 5." (¶ 147.)

2014) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted). At the same time, a court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal quotation mark omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B. Failure to Promote

Smith alleges that Weill and Adams illegally discriminated against her on the basis of her race by failing to promote her while promoting similarly qualified white employees. Weill and Adams move to dismiss these allegations on the ground that Smith never technically applied for a promotion.

In the Second Circuit, a plaintiff alleging illegal discrimination on the basis of missing out on an promotion must ordinarily allege that "(1) she is a member of a protected class; (2) she 'applied and was qualified for a job for which the employer was seeking applicants'; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998) (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). "[T]he second element . . . cannot be established merely with evidence that a plaintiff generally requested promotion consideration. A specific application is required . . . ." *Petrosino v. Bell Atl.*, 385 F.3d 210, 227 (2d Cir. 2004).

The specific-application rule admits of exceptions. "[T]o be excused from the specific application requirement, an employee must demonstrate that (1) the vacancy at issue was not posted, and (2) the employee either had (a) no knowledge of the vacancy before it was filled or (b) attempted to apply for it through informal procedures endorsed by the employer." *Id.*

5

Smith generally appears to allege that she expressed a strong desire for promotion through informal channels and that other employees were given promotions through similar channels. (Dkt. No. 15, Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss ["Plaintiffs' Memorandum"].) Weill contends that Smith simply did not apply for several open positions, including the Chairman's Suite promotion ultimately given to Matarazzo. (*See* Dkt. No. 14, Defendants' Memorandum of Law in Support of their Motion to Dismiss ["Defendants' Memorandum"], at 17.) Smith responds by arguing that she applied through the "obvious informal procedure endorsed" by Weill—namely, asking Adams. (Plaintiffs' Memorandum, at 12.)

There appears to be a misunderstanding about the precise nature of at least some of Smith's claims. Although the Amended Complaint is hardly a model of clarity on this point, it seems to allege that Adams could *create* promotional opportunities simply by altering the formal job descriptions of her employees. These employment changes are not, strictly speaking, "promotions" in the way that *Brown* and *Petrosino* use the term. Rather, they are—at this stage of the litigation, at least—more like performance-based pay increases. Smith alleges that Adams falsified the official job descriptions of white employees so that they would receive "promotions," but that Adams failed to do the same for Smith because she is black, despite the fact that Smith is otherwise well-qualified for such treatment. (¶¶ 124–25, 144–45.) This is not a failure-to-promote claim. This is a simple disparate treatment claim.

The opinions in *Brown* and *Petrosino* compel the conclusion that those cases do not apply here. The application-in-fact requirement exists to "ensure[] that the fact finder is not left to speculate as to the qualifications of the competing candidates, the damages to be derived from the salary of unknown jobs, the availability of alternative positions, the plaintiff's willingness to serve in them (e.g., in other locales or on other shifts), etc." *Petrosino*, 385 F.3d at 227. Here,

6

these concerns subside substantially. Smith alleges that she performed more duties than were reported on her official job description. Employees whose job descriptions were accurate advanced to higher salary levels. Smith expressed a desire for this to happen to her. There is a very low likelihood of uncertainty of the type described in *Petrosino*. Similarly, the requirement exists to protect the employer from having to keep track of every employee who has expressed a generalized willingness in being promoted. *Id.* Those concerns, too, are less relevant here because Weill allegedly decided to make salary decisions on this more flexible basis and because it seems that these opportunities were available to—and, presumably, desired by—all employees.

Therefore, Smith may proceed on her claim, but it is not—at least in part—a failure-to-promote claim. It is, instead, a simple disparate-treatment claim. As to her remaining allegation that she was denied the formal promotion that was ultimately given to Matarazzo, Defendants' motion is granted. Smith has not pleaded facts sufficient to give rise to the reasonable inference that she applied through an endorsed "informal" procedure for this promotion; rather, she has pleaded only that she declined to transfer into a position in the Chairman's Suite without a pay raise and that a year and a half later Matarazzo was offered a job in the Chairman's Suite with a pay raise. The amended complaint does not give rise to a reasonable inference that Matarazzo did not formally apply for this transfer.

    C.    **Retaliation**

Next, Smith alleges that Adams and Weill illegally retaliated against her for complaining about racial discrimination in the anesthesiology department. Defendants move to dismiss her allegations on the grounds that (a) she has not alleged any adverse employment action because she did not actually apply to any open positions; (b) she has not sufficiently alleged a causal connection between her complaint and any purported adverse actions; and (c) any purported adverse actions are insufficiently severe. The Court has already addressed the first argument

above, so the question here is whether Smith alleges a sufficient causal connection between her protected activity and a sufficiently severe retaliatory act.

"To establish a *prima facie* case of retaliation, an employee must show '[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action.'" *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003) (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.1998)) (describing Title VII retaliation standard); *see also Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (noting that § 1981 claims, NYSHRL claims, and Title VII claims for retaliation are all analyzed under the same framework). Under the NYCHRL, the plaintiff can sustain the second prong merely by showing that the employer did something that would be reasonably likely to deter a person from engaging in protected activity. *E.g., Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 70–71 (N.Y. App. Div. 1st Dep't 2009); *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013).

Smith alleges that a fly trap was placed on her file cabinet and that a logbook was removed from her desk the day after her complaint to HR. (¶ 138.) Although the temporal relationship between her complaint and these acts is likely sufficient to allege causation, the acts that Smith alleges are retaliatory are plainly insufficient to constitute a "materially adverse change" in Smith's conditions of employment, or even an act that would reasonably deter an employee from taking a protected action. *See Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (quoting *Richardson v. N.Y. State Dep't of Corr. Serv.*, 180 F.3d 426, 446 (2d Cir. 1999)) (internal quotation marks omitted); *see id.* ("To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'"); *see also Mihalik*, 715 F.3d a 113 (holding that, under NYCHRL, "courts may

still dismiss truly insubstantial cases" (internal quotation marks omitted).) As pleaded, Smith ascribes no particular significance to the logbook and pleads no facts to give rise to the inference that the fly trap was placed on her cabinet for any reason other than catching flies.[4]

Smith similarly alleges that Adams's general failure to "promote" her as described in the previous section was illegally retaliatory. Here, although the acts would be sufficiently averse to sustain a retaliation claim, the causal relationship is unclear. As described in the previous section, Smith's "promotion" claim is better described as an ordinary disparate treatment claim. And the treatment she alleges was essentially continuous. Thus, the fact that the alleged disparate treatment began *before* the alleged protected activity strongly rebuts any inference of causation that might otherwise have arisen. Defendants' motion to dismiss Smith's retaliation claim is, accordingly, granted.

### III.   Conclusion

For the foregoing reasons, Defendants' motion to dismiss Smith's disparate-treatment claim is DENIED and Defendants' motion to dismiss Smith's retaliation claim is GRANTED. Defendants' motion to dismiss the time-barred claims is GRANTED.

The Clerk of the Court is directed to close the motions at docket numbers 4 and 11.

SO ORDERED.

Dated: June 3, 2015
       New York, New York

_____
J. PAUL OETKEN
United States District Judge

---

[4] Smith is granted leave to amend her Complaint to describe what, if any, particular significance the logbook and flytrap have. Similarly, she may amend her Complaint to more thoroughly describe the facts surrounding Adams's alleged sabotaging of her work. As pleaded, it is unclear whether Adams's actions were sufficient to deter a reasonable person from taking a protected action.