```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
MARLENE AUGUSTINE, KEISHA BROWN,                             :
LISA CABRERA, IVETTE FRANCIS, and                            :
TAMMY SMITH,                                                 :
                                   Plaintiffs,  :       14-CV-7807 (JPO)
                                                             :
            -v-                                              :       OPINION AND ORDER
                                                             :
CORNELL UNIVERSITY, WEILL CORNELL                            :
MEDICAL COLLEGE, and KRISTEN ADAMS,                          :
                                   Defendants.  :
                                                             :
-------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

      Plaintiffs Marlene Augustine, Keisha Brown, Lisa Cabrera, Ivette Francis, and Tammy Smith bring this action against Cornell University, Weill Cornell Medical College (collectively "Weill"), and Kristen Adams, alleging illegal discrimination on the basis of race in violation of 42 U.S.C. § 1981 and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107 *et seq.* On June 3, 2015, this Court granted Defendants' motion to dismiss Smith's claim for retaliation, but gave Smith leave to amend her Complaint "to more thoroughly describe the facts" underlying her claim. (Dkt. No. 18 at 9.) Plaintiffs filed the Second Amended Complaint on July 10, 2015. (Dkt. No. 21.) Defendants again move to dismiss Smith's retaliation claim under Federal Rule of Civil Procedure 12(b)(6).[1] (Dkt. No. 24.) For the reasons that follow, Defendants' motion is denied.

---

[1] By its Order of June 3, 2015, the Court dismissed certain claims in the Amended Complaint as time-barred. (Dkt. No. 18 at 1 n.1.) Defendants now request that the Court strike from the Second Amended Complaint certain factual allegations related to these "stale claims." (Dkt. No. 26 at 12.) Under Rule 12(f) of the Federal Rules of Civil Procedure, a "court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Such motions "are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." *Lennon v. Seaman*, 63 F. Supp. 2d 428,

**I.     Background**

Smith, a black woman, is a Senior Administrative Secretary in the anesthesiology department of Weill Cornell Medical College in Manhattan.[2] (¶¶ 113, 115.) Adams, a white woman, is the supervisor of the department. (¶ 14.). As the "top administrator" for the department, Adams is "principally responsible for personnel decisions . . . including, inter alia, the decisions regarding what positions to create, who[m] to consider for promotions, and who[m] to ultimately promote." (¶ 117.)

In October 2010, Smith gave her department a low rating on an employee survey motivated, in part, by her belief that Adams was engaging in racial discrimination. (¶ 128.) In response, an employee of Weill informed Smith, as well as others, that he would meet with them to discuss low ratings received by the anesthesiology department. (¶ 129.)

In February 2011, Smith met with members of Weill's Human Resource Team and reported that she believed Adams was engaging in discrimination on the basis of race. (¶ 132.) Specifically, Smith alleged that Adams "promoted Caucasian employees in the Anesthesiology Department at a faster and higher rate than the minority employees" and that Smith and other minority employees "were continuously receiving low annual merit increases and were paid less for the amount of work they performed in comparison to their Caucasian counterparts." (*Id.*) Smith's complaints "were communicated to" Adams. (¶ 133.)

---

446 (S.D.N.Y. 1999). Because "courts should not tamper with the pleadings unless there is a strong reason for doing so" and Defendants have failed to articulate a basis under Rule 12(f) for striking these allegations, the motion to strike is denied. *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).

[2] The following facts are taken from the Second Amended Complaint and are assumed true for the purposes of the instant motion. (Dkt. No. 21.) Because the parties contest only Smith's claims, only the facts relevant to her claims are discussed. All record citations are to the Second Amended Complaint unless specified otherwise. Familiarity with the facts and procedural history of this case is presumed.

Approximately two days later, Smith "arrived at work to see that her employee information log books (which contained employee salary information) had been removed, and a fly glue trap had been intentionally placed on her metal files holder." (¶ 134.) Smith alleges that these acts were retaliation for her complaints about racial discrimination, and that Adams left a voicemail for Smith acknowledging removal of the log books. (¶ 135.) The act was intended to intimidate Smith, as the appearance of a "partially cleared off desk" suggested that Smith "may be fired." (¶ 151.) The flytrap, which had previously sat atop the logbooks, was placed on the metal cabinet "in an effort to express [Adams'] displeasure with Plaintiff's discrimination complaints." (¶ 152.)

Acts of retaliation allegedly continued. Adams intentionally scheduled a meeting to discuss the employee survey results for a day that Smith planned to take as a vacation day in order to exclude Smith from participating. (¶ 154.) In April, Adams emailed Smith to alert her that managing the "Emergency Management Planning [T]ool" would be an additional duty for which Smith was responsible. (¶ 155.) In May, Smith received a performance evaluation—written by Adams—that contained a "Needs Improvement" rating in a category. (¶ 156.) Smith had never before received such a rating. In October of 2011, Smith suffered a death in the family and Adams informed other staff members of this fact despite Smith's request that the information remain private. (¶ 157.)

Moreover, Adams began "sabotaging" Smith's work by assigning her "an increased workload and tasks that were beyond her expertise and which [Adams] knew would be time consuming." (¶ 158.) In addition to the aforementioned Emergency Management Planning Tool duty, Smith was tasked with writing up "policies and procedures," maintaining a newsletter, and assisting a doctor with the management of a fellowship program. (¶¶ 158-162.) In July 2013, Smith was assigned to assist "a doctor who has heavily involved in research and very dependent

upon the administrators assigned to him." (¶ 165.)  The intention of Adams was to burden Smith with an overwhelming number of job tasks so that Smith would fail to perform adequately.  The increased number of tasks required Smith to meet with Adams on a weekly basis; prior to her complaints, "one-on-one meetings occurred at a frequency of once every month or once every two months."  (¶ 163.)

Around June 2013, Adams gave Smith another performance evaluation with a "Needs Improvement" rating.  (¶ 164.)  The rating stemmed from Smith's increased workload and, allegedly, was part of Adams' "effort to justify any denials of promotion opportunities."  (*Id.*)  Finally, in January 2015, Adams conducted Smith's annual mid-year review. Adams intentionally requested feedback from fewer doctors than was typical in such a review, and did not request such feedback in a timely manner, such that Adams "was unable to inform [Smith] regarding positive feedback from doctors."  (¶ 166.)

## II.     Discussion

Defendants move to dismiss Smith's state and federal law claims for illegal retaliation.

To survive a motion to dismiss under Federal Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The standard of "facial plausibility" is met when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Plausibility is distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of the facts alleged is improbable, and that a recovery is very remote and unlikely."  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).  At the same time, a court is "not bound to accept as true a legal conclusion couched as a factual allegation."

*Twombly*, 550 U.S. at 555 (internal quotation mark omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Smith alleges that Adams and Weill illegally retaliated against her for complaining about racial discrimination in the anesthesiology department.

"To establish a *prima facie* case of retaliation, an employee must show '[1] participation in a protected activity known to the defendant; [2] an employment action disadvantaging the plaintiff; and [3] a causal connection between the protected activity and the adverse employment action.'" *Terry v. Ashcroft*, 336 F.3d 128, 141 (2d Cir. 2003) (quoting *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir.1998)) (describing Title VII retaliation standard); *Fattoruso v. Hilton Grand Vacations Co.*, 535 Fed. App'x 26, 27 (2d Cir. 2013) (describing the NYCHRL standard); *see also Hicks v. Baines*, 593 F.3d 159, 164 (2d Cir. 2010) (noting that § 1981 claims and Title VII claims for retaliation are analyzed under the same framework).  "A plaintiff sustains an adverse employment action if he or she endures a 'materially adverse change' in the terms and conditions of employment." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (citation omitted).  Under the NYCHRL, in contrast, the plaintiff can sustain the second prong merely by showing that the employer did something that would be "reasonably likely to deter a person from engaging in protected activity." *E.g.*, *Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 70-71 (N.Y. App. Div. 2009); *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 112 (2d Cir. 2013).

"To be 'materially adverse' a change in working conditions must be 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" *Galabya*, 202 F.3d at 640 (citation omitted).  For instance, "[a] materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less

distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." *Id.* (quoting *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)). At root, the requirement of material adversity is meant to separate "significant from trivial harms," as federal employment protections do not prescribe "a general civility code for the American workplace." *Burlington N. & Santa Fe R.R. Co.*, 548 U.S. 53, 68 (2006). The NYCHRL requires an independent, and more liberal, analysis focused on whether the adverse conduct was "reasonably likely to deter a person from engaging in protected activity," but it still does not function "as a general civility code." *Williams*, 61 A.D.3d at 71 n.12, 79; *see also Mihalik*, 715 F.3d a 113 (holding that, under NYCHRL, "courts may still dismiss truly insubstantial cases.") (internal quotation marks omitted); *Sosa v. Local Staff, LLC.*, 618 Fed. App'x 19, 20 (2d Cir. 2015).

Defendants primarily argue that Smith's retaliation claims should be dismissed because the alleged acts of retaliation—the logbook and fly trap incident, Smith's new job responsibilities, more frequent meetings with Adams, Adams' scheduling a meeting without Smith, the negative performance evaluations, Adams' failing to keep confidence about a death in the family, and the failure to obtain appropriate feedback for a midyear review—are trivial, petty harms rather than materially adverse actions under federal law. (Dkt. No. 26 at 8-9.) This argument fails.

Although not every act alleged by Smith rises above triviality, taken together they are sufficient to meet Smith's pleading burden at this early stage. In particular, she alleges that her complaints about racial discrimination resulted in Adams' assigning Smith an "overwhelming" number of new responsibilities for which Smith was ill-prepared, as well as negative performance evaluations. (¶¶ 155-156, 158-165.) Although a "mere . . . alteration in job responsibilities," *Galabya*, 202 F.3d at 640, is not enough to constitute a materially adverse

6

change, Smith has alleged more—a sustained campaign to undermine her by assigning more work, including work that she was unqualified to do, and issuing negative performance reviews. These allegations are sufficient to meet NYCHRL's standard of action that is "reasonably likely to deter a person from engaging in protected activity." *Williams*, 61 A.D.3d at 71.  Whether they are sufficient to meet the requirement of material adversity under § 1981 is a closer question, but one the Court decides in favor of Plaintiff.  Even if each individual retaliatory action alleged by Smith would not alone rise to the level of material adversity, taken together Smith has alleged enough to meet her burden at the pleading stage.

## II. Conclusion

For the foregoing reasons, Defendants' motion to dismiss is DENIED.

The Clerk of Court is directed to close the motion at docket number 24.

Defendants shall file an answer to the Second Amended Complaint within 20 days of this order.

SO ORDERED.

Dated: March 8, 2016
       New York, New York

_____
J. PAUL OETKEN
United States District Judge